IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

RICHARD R. LEONARD,

               Petitioner

    VS.

NO.  3:05-CV-60 (CDL)

WENDY THOMPSON, Warden,

PROCEEDINGS UNDER 28 U.S.C. §2254
BEFORE THE U.S. MAGISTRATE JUDGE

               Respondent

## RECOMMENDATION

Petitioner RICHARD R. LEONARD has filed a petition seeking federal habeas corpus relief. Tab #2. After being given the opportunity to dismiss an unexhausted ground contained in his original petition or have the petition dismissed without prejudice, petitioner LEONARD chose the former option. As such, petitioner LEONARD's petition proceeds on two grounds: (1) ineffective assistance of trial counsel, and (2) constitutionally insufficient evidence.

### I. FACTS

The historical facts concerning this case were set forth as follows by the Georgia Court of Appeals:

> *The state's evidence showed that on February 12, 1998, Williamson and his wife had left their home to go to work at their company by about 9:00 a.m., as they routinely did. Their housekeeper, who arrived at their residence after they left, called the Williamson's between 11:00 a.m. and 12:00 p.m. and reported that she had discovered that their home had been broken into. A back door had been pried and kicked open, and much of the Williamson's jewelry had been stolen.*
>
> *Meanwhile, at about 9:30 a.m., Leonard was seen driving slowly and braking on the street just outside the entrance to the Williamson's subdivision. Around noon that day, Leonard sold to a pawnshop as "scrap jewelry" pieces of the Williamsons' stolen jewelry.*

> *An investigator of the county sheriff's department asked Leonard why he had been in the vicinity of the Williamson' subdivision around the time of the burglary and how he had come to possess the items he sold. Leonard answered that he had been traveling to visit a friend. Leonard claimed that he had retrieved the items he sold from junk cars at [a] junkyard where he was then working. But according to the investigator, the items recovered from the pawnshop were "clean" and did not appear to have "wallered around in a floorboard of a [vehicle] and stomped on." And one piece, he recalled, looked like it had been "intentionally twisted."*
>
> *The state's evidence further showed that Leonard had worked a few years at the Williamson's family business until he was fired in late 1997 or early 1998. A few weeks before the burglary, Leonard had asked Williamson to hire him again, but Williamson refused. There was also evidence that Leonard had been to the Williamson's home and was familiar with its layout and contents.*
>
> *Leonard, the sole defense witness, denied committing the burglary. He admitted driving past the Williamson' subdivision at around 9:00 or 9:30 on the morning in question. And he admitted that he had slowed down at the subdivision entrance, explaining that he had done so only because of a sharp curve in the road at that point. He denied going to the Williamson's residence that day, explaining that he had been on his way to pick up lumber from a relative. Because there was too much lumber to transport in his car, he went to ask a friend, whom he knew only as "Kevin," to assist him by allowing the use of his pickup truck. Leonard and Kevin then went to Leonard's relative's house and retrieved the lumber in Kevin's truck. Leonard testified that to pay Kevin for the use of the truck, he sold some items of scrap jewelry to the pawnshop. Leonard claimed that he had collected the items from junk cars at various junkyards, one of which he referred to as "William Alewine's."*

*Leonard v. State*, 268 Ga. App. 745, 603 S.E.2d 82 (2004).


## II. PROCEDURAL HISTORY

Petitioner, RICHARD LEONARD, was indicted by the Madison County grand jury on April 22, 1998, for one count of burglary. After a jury trial on January 19, 2000, the jury found petitioner guilty. On March 14, 2000, the trial court imposed a twenty year "split" sentence, serve fifteen incarcerated and the balance on probation. Petitioner's conviction and sentence were affirmed on direct appeal on May 5, 2003. *Leonard v. State*, 268 Ga. App. 745, 603 S.E.2d 82 (2004). Petitioner filed the instant petition under 28 U.S.C. § 2254 on July 25, 2005, challenging his Madison County conviction.  After the aforementioned dismissal of petitioner's unexhausted ground, respondent filed a Answer.  Tab #15.

### III. LEGAL STANDARDS

Because the Georgia Court of Appeals adjudicated petitioner's claims on the merits, the Antiterrorism and Effective Death Penalty Act prevents a federal court from granting habeas relief unless the state court's decision either was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e).

"A state court decision is 'contrary to' clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir.2001). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Id.

The Supreme Court has held that § 2254(d)(1) imposes a " 'highly deferential standard for evaluating state-court rulings,' " *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (quoting *1307 *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 2066 n. 7, 138 L.Ed.2d 481 (1997)), a standard "which demands that state-court decisions be given the benefit of the doubt," Id.

The Supreme Court has instructed lower federal courts that the statute requires more than mere error, and more even than clear error, before federal habeas relief may be issued. E.g., *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred....")*; Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003) ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.")*; Early v. Packer*, 537 U.S. 3, 11, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002) (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law...."); *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

In ground one, petitioner LEONARD contends that he received ineffective assistance of trial counsel because counsel 1) failed to call witnesses, 2) failed to obtain statements, 3) failed to discuss with petitioner not calling certain witnesses, 4) failed to explain the trial process to petitioner, 5) deprived petitioner of a defense, and 6) failed to pursue petitioner's alibi defense.

The Supreme Court clearly established the federal law governing ineffective assistance claims in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, petitioner LEONARD's burden is two-fold. First, he must demonstrate that his counsel's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066. Second, he must establish a reasonable probability that, but for his counsel's deficient performance, the result of the proceedings would have been different. Id. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Both showings are necessary for any relief; failure to establish either is fatal and makes it unnecessary to consider the other. Id. at 697, 104 S.Ct. at 2069.

4

It is also important to note that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. at 2065. In addition to the deference to counsel's performance mandated by *Strickland* as discussed above, the AEDPA adds another layer of deference— this one to a state court's decision— when considering whether to grant federal habeas relief from a state court's decision. *Woodford*, 537 U.S. at 24, 123 S.Ct. at 360 (section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings") (internal marks and citation omitted). Thus petitioner LEONARD must do more than satisfy the *Strickland* standard. He must also show that in rejecting his ineffective assistance of counsel claim the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

## IV. DISCUSSION OF PETITIONER'S SPECIFIC CLAIMS

With regard to the petitioner's claims of ineffective assistance of counsel, the state court analyzed the claims as follows:

> *Leonard claims that trial counsel did not confer with him in preparing for trial or in deciding on a trial strategy. In addition, Leonard argues, trial counsel should have called as defense witnesses Kevin Billings and William Alewine. However, Leonard failed to present the testimony of either person at the motion for new trial hearing.*
>
> *Trial counsel outlined at the motion for new trial hearing his investigation of the case and the development of the defense strategy and tactics. He stated that he had met with Leonard as many as eight times before the trial. Each time, they discussed the facts of the case. Meanwhile, his investigation of the case had included interviewing the owner and an employee of the pawnshop. Trial counsel testified that he had discussed with Leonard trial strategy and tactics, including whether to call Billings and Alewine as defense witnesses, and that he and Leonard had agreed that no other witnesses would be called so as to preserve the right to conclude final arguments to the jury.*
>
> *Trial counsel stated that Leonard had named only one potential alibi witness-Billings. Trial counsel met with Billings and discovered that he could not account for Leonard's whereabouts during the entire pertinent time period. Furthermore, trial counsel determined that Billings had an "extremely rough" appearance and would not have been a credible witness. Trial counsel testified that he had told Leonard that Billings could not account for the entire pertinent time period, and that because he believed Billings would not be credible, Billings might actually prejudice the defense.*

5

> *Trial counsel also explained at the post-trial hearing why Alewine, the father of the owner of Alewine's junkyard, had not been called as a defense witness. Leonard had given trial counsel a brief, written statement from Alewine. The note stated that Leonard had been allowed to look through junk cars at Alewine's Junkyard, but it made no reference to what Leonard found in them. When trial counsel followed up on the note, Alewine told him that he was aware of Leonard's circumstances and assured counsel that Leonard had found "no kind of jewelry like that" in Alewine's junk cars. In addition, Alewine told trial counsel that there was some suspicion at the junkyard that Leonard had taken items that he had not been given permission to take. Trial counsel thus determined that Alewine would not be a favorable witness for the defense.*
>
> *Strategic and tactical decisions are the exclusive province of the attorney after consultation with the client. Such decisions made after thorough investigation are virtually unchallengeable, providing no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them. Deciding which defense witnesses to call is a matter of trial strategy and tactics. And declining to present evidence to preserve the final word in closing argument is a well-recognized trial tactic.*
>
> *The court was authorized to find that trial counsel adequately investigated the case and consulted with Leonard regarding trial preparation, strategy, and tactics. And trial counsel's decision not to call Alewine and Billings, thus preserving the final word in closing argument, was reasonable trial strategy. Furthermore, without Alewine's and Billings's testimony at the post-trial hearing, no evidence shows what they would have said at the trial. Therefore, it would be pure conjecture to conclude that their testimony would have helped the defense.*
>
> *Because Leonard has failed to satisfy either prong of Strickland, we conclude that the trial court did not err in denying Leonard's motion for new trial.*

*Leonard v. State*, 268 Ga. App. 745, 603 S.E.2d 82 (2004) (citations omitted).

Petitioner LEONARD's second claim is that the evidence presented at trial was constitutionally deficient. The state court began its analysis of this claim by noting that on appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. The court next pointed out that its responsibility is not to weigh the evidence or determine witness credibility but only to determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This is the correct standard and it requires that the verdict be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Having identified the above standard, the state court next reviewed the facts as laid out in the foregoing section entitled **I. FACTS** and concluded that the evidence was sufficient to support LEONARD's conviction.

## V. CONCLUSION

As previously noted, since the Georgia Court of Appeals adjudicated petitioner's claims on the merits, the Antiterrorism and Effective Death Penalty Act prevents a federal court from granting habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).  In this case, the state court correctly identified the appropriate legal rule to be used when reviewing claims of ineffective assistance of counsel as that which was clearly outlined by the court in *Strickland* and the correct legal rule to be used in reviewing claims of insufficient and/or deficient evidence as set forth in *Jackson.* Having identified the correct legal rules, it is the opinion of the undersigned that the state court's application of the rules to the facts of the instant case was both reasonable and correct.

Accordingly, it is RECOMMENDED that the above-captioned petition for habeas corpus be **DENIED.**

SO RECOMMENDED, this 2nd day of DECEMBER, 2008.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE